HOUSTON, Justice.
The City of Homewood appeals from an order denying its motion for a new trial. Homewood sued in the Jefferson County Circuit Court, Bessemer Division, for restitution, an accounting, and declaratory and injunctive relief against the Birmingham-Jefferson County Transit Authority.[1] Specifically, Homewood argues that the Transit Authority used improper accounting methods and computations in making its budget pursuant to Act No. 87-449, § 7, Ala. Acts 1987. Act No. 87 — 449 is local legislation applicable only to Jefferson County. The Act provides funding for the Transit Authority in exchange for transportation services provided to Jefferson County and Birmingham and surrounding municipalities. Section 7 of the Act allows the Transit Authority to prepare and set forth in its budget the anticipated costs per hour of operation. Homewood claims, in essence, that the Transit Authority overcharged the contracting municipalities for bus transportation services.
On December 28, 1993, after three days of testimony on Homewood’s motion for a preliminary injunction, the trial court enjoined payment of fees the Transit Authority claimed it was owed under the Act for 1994 and ordered the Jefferson County tax collector to hold, subject to a trial on the merits, those funds received from the municipalities as ad valorem taxes. The trial court set a trial date and directed the court reporter to transcribe the preliminary injunction hearing so that the transcriptions could be preserved for trial. However, the court reporter never transcribed the testimony and subsequently left the state. The trial was delayed over a year and the case was tried to the court, without a jury. Almost two years after that trial, the trial court entered a judgment in favor of the Transit Authority. The court ordered the Jefferson County tax collector to release to the Transit Authority those funds collected as ad valorem taxes and held pursuant to the December 28,1993, order. Home-wood moved for a new trial pursuant to Rule 59(a), Ala.R.Civ.P. The court denied the motion.
In support of its motion for new trial, Homewood asserted that during the preliminary injunction hearing both sides had pre *903 sented substantial evidence from accounting experts. At trial, Homewood said it could present only a limited amount of evidence because of the trial court’s expressed willingness to incorporate into the record the transcriptions from the preliminary injunction hearing and to include those as part of the trial record. As a result, Homewood asserted, the trial court entered its judgment without having the opportunity to review a full and complete record. Homewood argued that the passage of time between the December 1993 hearing, the April 1995 trial, and the March 1997 entry of judgment only magnified the importance of the missing testimony.
In its order denying Homewood’s motion for a new trial, the trial court acknowledged the “unusual circumstances” surrounding this ease and acknowledged that the record was incomplete. Nevertheless, while recognizing the court reporter’s failure to transcribe the earlier testimony, the trial court stated in its order that “the Court took very detailed notes and [that the Court] used these notes to arrive at its order.” Furthermore, the trial court stated that it would make every effort to complete the transcript should an appeal be taken, and it stated that it would make available its notes should the parties be required to make a statement of the evidence under Rule 10(d), Ala.R.App.P. Neither the transcripts nor the trial court’s notes were made available; however, both Homewood and the Transit Authority were allowed to supplement the record with statements of the evidence, pursuant to Rule 10(d). The trial court later issued an order finding that the statements of the evidence were complete and accurate renditions of the evidence presented during the preliminary injunction hearing.
Homewood asserts that the Transit Authority improperly interpreted § 7 of the Act in computing its “anticipated cost per hour of operation.” Section 7 provides:
“On or prior to June 1 of each year, the transit authority shall prepare and submit to the county, the city, and each municipality which has requested to be served by the transit authority pursuant to the provisions of Section 6 hereof, a written budget for the transit authority for the forthcoming fiscal year. Such budget shall be prepared by the transit authority and shall set forth the number of hours of operation and the anticipated cost per hour of operation for the forthcoming fiscal year for the service requested by each municipality pursuant to the provisions of Section 6 hereof, exclusive of anticipated fare box revenue, federal operating subsidies and funds received by the Transit Authority pursuant to Sections 4 and 5 of this act and Act No. 131 of the 1984 Regular Session of the Alabama Legislature.... ”
In its Rule 10(d) statement of evidence, Homewood summarized the testimony of Tommy Sisson, a certified public accountant. Sisson testified that the Act provides that the municipalities must pay the Transit Authority for service according to an “average cost per hour of usage.” To compute this, Sisson said, the Transit Authority must aggregate its operating costs and then subtract certain revenues to reach its net operating cost. The net operating cost is then divided by the Transit Authority’s total hours of service, he said, to arrive at an average cost per hour of service; then, according to Sisson, the anticipated cost per hour is multiplied by the number of hours of service to be provided to a particular municipality, in order to reach the total amount owed by the municipality to the Transit Authority.
According to Sisson, the Transit Authority took a very broad view of the costs to be included in its calculation and a very narrow view of the revenues to be deducted. The result, according to Sisson, was a relatively high average cost figure. Sisson testified that there are three methods that can be used to reach an accurate average cost ' per hour. Sisson recognizes that the Transit Authority uses one of those methods, but, he claims, the Transit Authority disregards generally accepted accounting principles (“GAAP”) by including certain costs associated with running the transit system and ignoring revenues associated with those costs. The GAAP principle here, according to Sisson, is called “matching.” Specifically, Sisson claims that the Transit Authority excludes from its computations revenues re *904 ceived from the Downtown Area Rapid Transit (“DART”), the University of Alabama-Birmingham Shuttle, and the Legion Field Shuttle, while at the same time including the costs associated, with those services. By excluding the revenues from these services, Sisson said, the Transit Authority has artificially increased its operating costs figure, resulting in higher than appropriate charges to the municipalities. This is particularly egregious, Homewood claims, because those services are confined to the city limits of Birmingham and confer no benefit upon the citizens of.Homewood.
Furthermore, Sisson testified, the Transit Authority includes in its calculation of operating costs 100% of the depreciation of its costs for new buses, although the Transit Authority is reimbursed for approximately 80% of the cost of its new buses through federal grants. In essence, Sisson testified, the Transit Authority is charging the municipalities for buses as to which the Transit Authority did not have to pay the full cost and is in effect being paid twice for the same buses.
In total, Sisson testified that for the years 1991 through 1993, Homewood was charged an excess of $179,340.31. Homewood seeks restitution in that amount, as well as declaratory and injunctive relief.
In response, the Transit Authority submitted testimony from Bill Gray, finance director for the Transit Authority. Gray testified that he prepares the budget upon which the cost-per-hour allocation is based. Gray stated that the DART, the UAB Shuttle, and the Legion Field Shuttle are all area-wide special services that benefit Jefferson County, Birmingham, and the surrounding municipalities, and that there is no way to determine which citizens utilize those services. Furthermore, Gray testified that revenues derived from the DART, the UAB Shuttle, and the Legion Field Shuttle are too speculative to include in the cost-per-hour allocation. To include those revenues, Gray said, could result in an insufficient cost-per-hour allocation. Therefore, according to Gray, all participating municipalities should share in the cost of those services.
Gray testified also that including the 100% depreciation in the cost-per-hour calculation allows the Transit Authority to generate funds for future capital purchases. Additionally, Gray testified, the Transit Authority also maintains capital and operating reserves to cover any operating deficits, and he said the Transit Authority had a deficit for the years 1992-1994. Finally, Gray testified that the cost-per-hour allocation is prepared in compliance with the Act and that the budget and the accounting system are both handled in accordance with the “Uniform System of Accounts and Records Reporting Manual,” as required by the Federal Transit Administration.
Also testifying for the Transit Authority was Jeffrey White, Sr., a certified .public accountant and an independent auditor for the Transit Authority. Mr. White testified that the 1991 and 1992 cost-per-hour allocation complied with the Act; and, furthermore, White stated that in 1993 the Transit Authority deducted from its operating costs certain appropriations from the State of Alabama in the amount of $200,000; as a result, Mr. White said, the Transit Authority actually overstated the 1993 cost-per-hour allocation by $.63. Also, White testified, the Act does not require the Transit Authority to include revenue from the DART, the UAB Shuttle, the Legion Field Shuttle, or any other special services in its cost-per-hour calculation, because to do so, he said, would render the budget too speculative. White also testified that the Act authorizes the Transit Authority to include 100% of the depreciation costs of the buses, as Sisson had earlier testified, in its cost-per-hour computation. Finally White stated that because generally accepted accounting principles are not mentioned in the Act, the Transit Authority is not bound by those principles; instead, he claims, it is required only to comply with the Alabama Legislature’s computation formula embodied in the Act.
Homewood argues that as a result of the court reporter’s failure to transcribe the evidence presented during the preliminary injunction hearing, “the substantial evidence presented by Homewood ... during the successful hearing was never incorporated in the *905 record.” Homewood asserts that the trial court erred in denying a new trial because, Homewood argues, the court did not have “the opportunity to review and consult a full and complete record.” We do not agree. The trial court recognized the absence of this evidence in its April 1997 order denying Homewood’s motion for a new trial. The trial court’s order stated that “the Court took very detailed notes” and that it used those notes to arrive at its conclusion. Rule 10(d) provides a method for supplementing trial transcripts should they not contain all of the evidence from the trial proceedings. Once the appellant provides a statement of the evidence and objections and amendments are served, the trial court rules on the proposed statements and amendments and issues an approved statement of the evidence. The statement of evidence is then preserved as the record on appeal.
Whether to grant or to deny a motion for a new trial rests within the sound discretion of the trial court. On appeal, the trial court’s ruling will not be reversed unless the record shows plain and palpable error or shows that some legal right has been abused. McBride v. Sheppard, 624 So.2d 1069, 1070-71 (Ala.1993). In light of the court-approved Rule 10(d) statement of the evidence and the court’s statement that it considered all the evidence presented during the proceedings, we find no plain or palpable error. Therefore, the trial court did not abuse its discretion. The judgment is affirmed.
AFFIRMED.
HOOPER, C.J., and ALMON, COOK, and SEE, JJ., concur.

. This action was initially filed by the City of Fairfield and the City of Bessemer. Later, the City of Mountain Brook and the City of Home-wood intervened as plaintiffs. The City of Fairfield and the City of Bessemer filed joint stipulations of dismissal and were subsequently dismissed as plaintiffs. The City of Mountain Brook and the City of Homewood remained as plaintiffs throughout the trial proceedings. The City of Mountain Brook appealed, but later dismissed its appeal.